**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

100%, LLC, a Colorado limited liability
Company,

        Plaintiff,

v.

MICHAEL W. TINKEY, D.C., an individual

        Defendant.

_____/

Docket No:

## **COMPLAINT**

100%, LLC ("Plaintiff"), by and through its undersigned counsel, brings this action against Michael W. Tinkey, D.C. ("Defendant") and alleges as follows:

### **Parties**

1. Plaintiff is a Colorado limited liability company and California citizen; its principal place of business at 110 South Weber Street, suite 104, Colorado Springs, Colorado 80903.

2. Plaintiff's sole members are Dr. Jason Helfrich and his wife, Vanessa Helfrich, both of whom are citizens of California.

3. Defendant is a citizen of Colorado and his address is believed to be 357 McCaslin Boulevard, suite 200, room 305, Louisville, Colorado 80027.

### **Jurisdiction and Venue**

4. Defendant is a citizen of Colorado and has therefore consented to the personal jurisdiction of this Court.

5. This Court has subject matter jurisdiction over the causes of action contained herein pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

6. Venue is proper under 28 U.S.C. §1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

7. Jurisdiction and venue are proper in this judicial district pursuant to the mandatory forum and venue selection clause contained in the agreements between the parties, specifically at Section 16 of the Franchise Agreement (defined below).

## Statement of Claim

### *Franchise Agreement & Personal Guaranty*

8. Plaintiff offers third parties licenses to open and operate 100% Chiropractic franchised businesses under the service mark 100% CHIROPRACTIC (the "Mark").

9. The Mark is federally registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") at registration number: 4894493, which registration was issued on February 2, 2016.

10. On September 30, 2015, 100% Chiropractic Wellness Denver Two, LLC ("Franchisee"), an entity wholly owned by Defendant at the time, and Franchisor entered a contract (the "Franchise Agreement") pursuant to which Franchisee was granted the right and undertook the obligation to operate a Franchised Clinic at 300 Center Drive, unit E, Superior, Colorado ("Approved Location") for a term of ten (10) years. A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

11. As consideration for the Franchise Agreement, Franchisee agreed to pay an "Initial Franchise Fee" of $300,000.00.

12. Defendant personally and unconditionally agreed to perform and keep each and every covenant, obligation, payment, agreement and undertaking on the part of Franchisee under the Franchise Agreement, including, without limitation, the covenants of confidentiality and non-

competition pursuant to the Owner's Guaranty and Assumption of Obligations Agreement ("Franchise Agreement Guaranty") executed by Defendant on September 30, 2015. A true and correct copy of the Franchise Agreement Guaranty is attached to this Complaint at Exhibit "B."

13. Pursuant to the Franchise Agreement Guaranty, Defendant waived, among other things: (i) protest and notice of default, demand for payment or nonperformance of any obligations guaranteed by the Franchise Agreement Guaranty; (ii) any right Defendant may have to require that an action be brought against Franchisee or any other person as a condition of Defendant's liability; (iii) all right to payment or reimbursement from, or subrogation against, Franchisee; and (iv) any and all other notices and legal or equitable defenses to which Defendant may be entitled in his capacity as guarantor.

14. Pursuant to the Franchise Agreement Guaranty, Defendant also agreed that Defendant would reimburse Plaintiff for, among other things, its attorneys' fees and costs incurred by Plaintiff in connection with enforcing the Franchise Agreement Guaranty in a judicial or arbitration proceeding.

**_Loan Documents & Personal Guaranty_**

15. Franchisee financed its Initial Franchise Fee obligation with a $300,000.00 loan ("Loan") from Plaintiff.

16. Franchisee executed a $300,000.00 promissory note ("Note"), a security agreement ("Security Agreement") and a collateral assignment of membership interest ("Collateral Assignment") (collectively, the "Loan Documents") in connection with the Loan transaction. True and correct copies of the Loan Documents are attached as Exhibit "C."

17. Pursuant to the Note, Franchisee agreed to repay Plaintiff the Initial Franchise Fee with interest accruing at 8.25 percent per annum, compounded monthly over 86 months.

18.     Pursuant to the Security Agreement and the Collateral Assignment, Franchisee granted Plaintiff a security interest "in and to any and all furniture, fixtures, equipment and accounts receivable associated with the business known as 100% Chiropractic Wellness Denver Two, LLC, including a 100% membership interest in 100% Chiropractic Wellness Denver Two, LLC, a Colorado professional limited liability company securing a promissory note dated September 30, 2015 in the amount of $300,000.00" ("Secured Collateral").

19.     Defendant personally guaranteed Franchisee's obligations under the Loan Documents by virtue of his execution of an additional guaranty ("Loan Guaranty") on September 30, 2015. A true and correct copy of the Loan Guaranty is attached as Exhibit "D."

20.     Pursuant to the Loan Guaranty, Defendant absolutely and unconditionally, without limitation as to the amount of liability, guaranteed to Plaintiff that Franchisee would promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Plaintiff of whatever nature.

21.     Pursuant to the Loan Guaranty, Defendant's liability is not conditional or contingent upon the genuineness, validity, sufficiency, enforceability of the indebtedness or any instruments or agreements related thereto or any security or the collateral, and Plaintiff is not required to proceed against Franchisee or to exercise, pursue or enforce any right or remedy Plaintiff may have against the Collateral, any other guarantor, any other party or otherwise, before proceeding against Defendant.

22.     Pursuant to the Loan Guaranty, Defendant waived certain rights, including, without limitation, any right to require Plaintiff to exhaust any collateral for the Indebtedness or to first proceed against any other person or entity.

***Obligations Under the Personally Guaranteed Franchise Agreement and Loan Documents***

23. Pursuant to the terms of the Franchise Agreement, Franchisee agreed to pay the following monthly fees to Plaintiff:

(a) $1,000.00 per month for the first three months after the opening of the Franchised Clinic, and $2,000.00 per month thereafter, pursuant to section 6.2 of the Franchise Agreement ("Royalty Fee");

(b) A monthly "Billing Fee" equal to ten percent (10%) of insurance billing revenues until Franchisee pays off Franchisor financing of the purchase of the Franchised Clinic, and eight percent (8%) of the Franchised Clinic's gross revenues thereafter, pursuant to section 6.3; and

(c) A "Marketing Fee" of $750.00 per month for regional and national marketing, pursuant to section 6.5.

24. Franchisee acknowledged in section 9.2 of the Franchise Agreement that it had no right to use certain information ("Confidential Information") other than in the development and operation of its Franchised Clinic.

25. Section 9.1 defines "Confidential Information" as "unique confidential proprietary information and trade secrets consisting of [but not limited to] . . . (1) services and products offered and sold at 100% franchises; (2) knowledge of sales and profit performance of any one or more 100% franchisees; (3) knowledge of sources of products sold at 100% franchises, advertising and promotional programs, and image and decor, franchises, advertising and promotional programs, and image and decor; (4) 100% Software; (5) methods, techniques, formats, specifications, procedures, information, systems, and knowledge of, and experience in, the development, operation, and franchising of 100% franchises; and (6) the selection and methods of training

employees." Additionally, "ideas, concepts, methods, or techniques of improvement relating to the Franchise developed by Franchisee or its employees."

26. Franchisee agreed in section 9.3 of the Franchise Agreement not to "perform services for, or have any direct or indirect interest as a disclosed or beneficial owner, investor, partner, director, officer, employee, manager, consultant, representative, or agent in, any business that offers products or services the same as or similar to those offered or sold at 100% Location franchises" during the term of the Franchise Agreement ("In-Term Noncompetition Agreement").

27. Franchisee agreed in section 9.3 of the Franchise Agreement "not to engage in a competitive business for a period of two (2) years after the termination or expiration [of the Franchise Agreement] within twenty-five (25) miles of your Franchise Premises or any other 100% Location franchise, unless you have paid all sums owing under this Agreement to us, our affiliates, or third parties, including the initial franchise fee, any start-up or construction costs you have financed through us, or an affiliate or third party, or any other fees or sums owing under this Agreement or other agreement you have with us or our affiliates" ("Post-Term Noncompetition Agreement").

28. Defendant agreed to be individually bound by the terms of the Franchise Agreement, including the obligations referenced in paragraphs 23 through 28 of this Complaint, by virtue of the Franchise Agreement Guaranty.

29. Section 15.2 of the Franchise Agreement permits Plaintiff to terminate the Franchise Agreement effective upon delivery of notice to Franchisee if, among other things, Franchisee abandons the Franchised Clinic, fails to make payments to Plaintiff when due, or fails to comply with any other operating standard or state or federal law.

30. Franchisee failed to pay the Royalty Fee, the Billing Fee, and the Marketing Fee (collectively, "Monthly Franchise Payments") for several months in 2018 and stopped altogether in 2019.

31. Defendant failed to make any of the Monthly Franchise Payments in violation of the Franchise Agreement Guaranty.

32. In or around January 2019, Franchisee stopped making required monthly payments under the Loan.

33. Plaintiff issued notices to Franchisee and Defendant regarding the failure to make the required payments under the Loan and the Monthly Franchise Payments.

34. Defendant represented to Plaintiff that he intended to pay off all Franchisee's obligations with the financial assistance of a family friend.

35. Defendant has yet to satisfy the amounts he owes to Franchisor under the Franchise Agreement and the Loan Documents.

36. In addition to other damages, Defendant owes to Plaintiff the unpaid balance on the Note, which is $284,616.61, as well as unpaid Monthly Franchise Payments in the amount of $28,577.52, plus penalties and late fees in connection with both unpaid balances.

37. In 2019, before the Franchise Agreement was terminated, Defendant opened and began operating another chiropractic clinic located at 357 McCaslin Boulevard, suite 200, room 305, Louisville, Colorado 80027 ("Competing Clinic").

38. Defendant removed the Secured Collateral from the Approved Location and used it at the Competing Clinic.

39. Defendant continues to make use of the Secured Collateral at the Competing Clinic.

40. Defendant also continued to make use of the Mark in connection with promoting the opening and operation of the Competing Clinic, including in communications to customers.

41. Plaintiff issued a Cease & Desist, Termination and Demand Notice dated September 12, 2019 ("Termination Notice") to Defendant. A true and correct copy of the Termination Notice is attached as Exhibit "E."

42. The Termination Notice advised Defendant of the various, material defaults under the Franchise Agreement and Loan Documents, for which Defendant is personally responsible and liable pursuant to the personal guaranty agreements Defendant executed.

43. Plaintiff demanded that Defendant cease and desist any and all further use of the Marks.

44. The Termination Notice further advised Defendant that Plaintiff had terminated the Franchise Agreement on the basis of the abandonment of the Franchised Clinic, operation of the Competing Clinic, and Franchisee's consistent failure to make Monthly Franchise Payments.

45. Defendant received the Termination Notice on September 16, 2019 ("Termination Date").

46. Defendant failed to make any payments to Plaintiff following his receipt of the Termination Notice.

47. Defendant continues to operate the Competing Clinic in violation of the Post-term Noncompetition Agreement using Plaintiff's Confidential Information, as well as the patient information and Secured Collateral Defendant unlawfully removed from the Franchised Clinic.

48. Plaintiff has suffered damages as a result of Defendant's breaches and conduct.

## COUNT I: BREACH OF CONTRACT
## FRANCHISE AGREEMENT IN-TERM NONCOMPETITION AGREEMENT

49. Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

50. Plaintiff performed all its obligations under the Franchise Agreement.

51. Under the In-Term Noncompetition Agreement in section 9.3 of the Franchise Agreement, Franchisee promised that it would not "perform services for, or have any direct or indirect interest as a disclosed or beneficial owner, investor, partner, director, officer, employee, manager, consultant, representative, or agent in, any business that offers products or services the same as or similar to those offered or sold at 100% Location franchises" during the term of the Franchise Agreement.

52. Defendant agreed to be individually bound by the In-Term Noncompetition Agreement by virtue of the Franchise Agreement Guaranty.

53. Defendant opened and operated the Competing Clinic before the Termination Date, in blatant violation of the In-Term Noncompetition Agreement.

54. Defendant's operation of the Competing Clinic during the term of the Franchise Agreement damaged patient goodwill and the reputation associated with Plaintiff's Mark and other proprietary marks and standards.

55. Plaintiff suffered damages as a result of Defendant's breach of the In-Term Noncompetition Agreement.

56. Pursuant to the Franchise Agreement Guaranty, Defendant agreed that Plaintiff would be entitled to attorneys' fees and costs incurred enforcing the Franchise Agreement Guaranty in a judicial or arbitration proceeding.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant Michael W. Tinkey, D.C. as follows:

(a) Damages in an amount to be determined at trial;

(b) An accounting of Defendant's Competing Clinic;

(c) Payment for all monetary damages suffered by Plaintiff;

(d) Attorneys' fees and costs incurred bringing this action; and

(e) Any such further relief this Court deems appropriate.

### COUNT II: BREACH OF CONTRACT
### FRANCHISE AGREEMENT POST-TERM NONCOMPETITION AGREEMENT

57. Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

58. Plaintiff performed all its obligations under the Franchise Agreement.

59. Under the Post-Term Noncompetition Agreement in section 9.3 of the Franchise Agreement, Franchisee promised "not to engage in a competitive business for a period of two (2) years after the termination or expiration [of the Franchise Agreement] within twenty-five (25) miles of your Franchise Premises or any other 100% Location franchise, unless you have paid all sums owing under this Agreement to us, our affiliates, or third parties, including the initial franchise fee, any start-up or construction costs you have financed through us, or an affiliate or third party, or any other fees or sums owing under this Agreement or other agreement you have with us or our affiliates."

60. Defendant is individually bound by the Post-Term Noncompetition Agreement pursuant to the Franchise Agreement Guaranty.

61. The Competitive Clinic is located at 357 McCaslin Boulevard, suite 200, room 305, Louisville, Colorado 80027, which is within twenty-five miles of the Franchised Clinic.

62. Defendant still owes Plaintiff $313,194.13 for the balance due on the Note and the unpaid Monthly Franchise Payments, plus interest and late fees.

63. Because the Competing Clinic is located within twenty-five miles of the Franchised Clinic and Defendant has not paid all sums owed to Plaintiff, Defendant's continued operation of the Competing Clinic violates the Post-Term Noncompetition Agreement.

64. Defendant is damaging the patient goodwill and reputation associated with the Mark and System.

65. Plaintiff has no adequate remedy at law in that the damages to the System, confidential information and proprietary materials, and the consequential injury to consumer goodwill cannot be completely compensated in monetary damages. The damages sustained by Plaintiff as a result of the loss of its goodwill and the potential deception and harm to the consuming public cannot be ascertained; nor can such harm be compensated for in monetary damages.

66. As a direct and proximate result of Defendant's operation of the Competing Clinic, Plaintiff has suffered and continues to suffer damage to its business, trade secrets, reputation and goodwill.

67. Irreparable harm to Plaintiff will increase unless Defendants is enjoined from operating the Competing Clinic.

68. Pursuant to the Franchise Agreement Guaranty, Defendant agreed that Plaintiff would be entitled to attorneys' fees and costs incurred enforcing the Franchise Agreement Guaranty in a judicial or arbitration proceeding.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant Michael W. Tinkey, D.C. as follows:

(a) Defendant be enjoined from operating any competing clinic within 25 miles of the Franchised Clinic or any other franchised clinic operated by a 100% franchisee;

(b) An accounting of and payment for all monetary damages suffered by Plaintiff;

(c) Attorneys' fees and costs incurred bringing this action; and

(d) Any such further relief this Court deems appropriate.

## COUNT III: BREACH OF CONTRACT
## FAILURE TO PAY ROYALTY FEES, BILLING FEES, AND MARKETING FEES

69. Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

70. Plaintiff performed all its obligations under the Franchise Agreement.

71. Franchisee breached the Franchise Agreement by failing to pay Royalty Fees pursuant to Franchise Agreement section 6.2, Billing Fees pursuant to Franchise Agreement section 6.3, and Marketing Fees pursuant to Franchise Agreement section 6.5.

72. Defendant owes Plaintiff $28,577.52 for unpaid Monthly Franchise Payments which amount remains unpaid as of the date this action was commenced.

73. As a direct and proximate result of Franchisee's breach, Plaintiff sustained damages.

74. Defendant personally guaranteed the Franchisee's Franchise Agreement obligations when he executed the Franchise Agreement Guaranty.

75. Pursuant to the Franchise Agreement Guaranty, Defendant agreed that Plaintiff would be entitled to attorneys' fees and costs incurred enforcing the Franchise Agreement Guaranty in a judicial or arbitration proceeding.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant Michael W. Tinkey, D.C. for damages in the amount of $28,557.52 plus interest, late fees, attorneys' fees, and costs, as well as any further relief this Court deems appropriate.

### COUNT IV: BREACH OF CONTRACT
### FAILURE TO PAY PRINCIPAL AND INTEREST UNDER TERMS OF NOTE

76. Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

77. Plaintiff performed all its obligations under the Note.

78. Franchisee breached the terms of the Note by failing to pay the remaining balance of $284,616.16.

79. Defendant personally guaranteed the Franchisee's payment obligations under the Note and other obligations under the Loan Documents when he executed the Loan Guaranty.

80. Defendant failed to pay the remaining balance under the Note in the amount of $284,616.16.

81. As a direct and proximate result of Franchisee's breach, Plaintiff sustained damages in the amount of $284,616.16.

82. Pursuant to Section 15.2 of the Franchise Agreement, Plaintiff is entitled to recover attorneys' fees and costs incurred in connection with the termination of the Franchise Agreement.

83. Pursuant to Loan Guaranty section 4, Defendant agreed that Plaintiff would be entitled to attorneys' fees and costs incurred enforcing the Loan Guaranty.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant Michael W. Tinkey, D.C. for damages in the amount of $284,616.16 plus penalties and interest, as well as any further relief this Court deems appropriate.

## COUNT VII: BREACH OF CONTRACT
## BREACH OF THE SECURITY AGREEMENT

84. Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

85. Plaintiff performed all its obligations under the Security Agreement.

86. Defendant personally guaranteed Franchisee's obligations under the Security Agreement and agreed to be individually bound thereby by virtue of the Loan Guaranty.

87. The Security Agreement provided that the Secured Collateral was to secure Franchisee's obligations under the Loan Documents.

88. The terms of the Security Agreement prohibited removal of the Secured Collateral from the Franchised Clinic.

89. Defendant failed to make payments due to Plaintiff under the Loan Documents, including the Note.

90. Defendant removed Secured Collateral from the Franchised Clinic.

91. Defendant made use of the Removed Collateral at the Competing Clinic.

92. Defendant continues to make use of the Removed Collateral in connection with the operation of the Competing Clinic.

93. Defendant's removal and unauthorized use of the Secured Collateral constitutes a breach of the Security Agreement.

94. Plaintiff suffered damages as a result of Defendant's breach of the Security Agreement and accompanying personal guaranty.

95. Defendant is liable to Plaintiff for damages.

**WHEREFORE**, Plaintiff demands: (a) judgment in its favor against Defendant Michael W. Tinkey, D.C. for damages in an amount to be determined at trial, (b) judgment in its favor

against Defendant requiring Defendant to return the Secured Collateral to Plaintiff; and (c) any further relief this Court deems appropriate.

## COUNT VIII: CONVERSION

96.  Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

97.  Pursuant to the Security Agreement, Plaintiff had the right to ownership or possession of the Removed Collateral.

98.  Defendant unlawfully took the Removed Collateral from the Franchised Clinic in violation of the Security Agreement.

99.  Defendant unlawfully moved the Removed Collateral to the Competing Clinic.

100.  Defendant unlawfully retains possession of the Removed Collateral.

101.  Defendant continues to make unlawful use and maintains unlawful possession of the Removed Collateral.

102.  Plaintiff has suffered damages as a result of Defendant's conduct and unlawful removal of the Removed Collateral from the Franchised Clinic.

**WHEREFORE**, Plaintiff demands: (a) judgment in its favor against Defendant Michael W. Tinkey, D.C. for damages in an amount to be determined at trial, (b) judgment in its favor against Defendant requiring Defendant to return the Secured Collateral to Plaintiff; and (c) any further relief this Court deems appropriate.

## COUNT VIII: CIVIL THEFT (C.R.S. §18-4-405)

103.  Plaintiff incorporates by reference the above paragraphs as if fully set forth in this paragraph.

104. Pursuant to the Security Agreement, Plaintiff had the right to ownership or possession of the Removed Collateral.

105. Defendant unlawfully took the Removed Collateral from the Franchised Clinic in violation of the Security Agreement.

106. Defendant unlawfully moved the Removed Collateral to the Competing Clinic.

107. Defendant unlawfully retains possession of the Removed Collateral.

108. Defendant continues to make unlawful use and maintains unlawful possession of the Removed Collateral.

109. Plaintiff has suffered damages as a result of Defendant's conduct and unlawful removal of the Removed Collateral from the Franchised Clinic.

**WHEREFORE**, Plaintiff demands: (a) judgment in its favor against Defendant Michael W. Tinkey, D.C. for damages in an amount to be determined at trial, (b) judgment in its favor equal to three times actual damages plus attorneys' fees; and (c) any and all further relief this Court deems appropriate.

Dated: April 9, 2020

Respectfully submitted,
**FISHER ZUCKER LLC**

By: */s/ F. Joseph Dunn*
F. Joseph Dunn
21 S. 21st Street
Philadelphia, PA 19103
(215) 825-3100
(215) 825-3101(fax)
jdunn@fisherzucker.com
Attorney for Plaintiff